Good morning, Your Honors. My name is Tara Allen, and I represent Appellant Bobby J. Scott. May it please the Court. The main issue in this case is twofold, whether the State waived the procedural default doctrine and whether the District Court erred in sua sponte addressing the issue. The sub-issues are also twofold, whether the District Court erred in finding procedural default, assuming it was within my discretion to do so, and if not, whether cause and prejudice excused Appellant's procedural default. I'm happy to address any of these issues with which your Court is concerned up front or address them in order, whichever is the pleasure of the Court. Well, on the waiver, it's hard to see how the State waived the procedural default because it was — it filed a motion on limitations grounds, which was just a motion, and the magistrate judge turned it into an answer. Right. The magistrate — And also said, well, if we get to that, you know, if I find that there are other grounds involved, I'll let the State supplement their answer. But then it went ahead and decided something without doing that. It's hard. The State never really had an opportunity to waive anything, did it? I believe they did. The District Court ordered the State to file an answer. Right. And they didn't. And specifically in that order — Does that waive everything that should have been in their answer when they failed to? Well, I think so for two reasons. The first reason is the District Court specifically told the State, we want you to file an answer, we don't want you to file a dispositive motion. And in that answer, we specifically want you to address exhaustion of State remedies. The State ignored that order, filed a motion to dismiss anyway. And not only that, but in its motion to dismiss, which — the intent of which was to address procedural issues of why the case should not be heard instead of going to the merits, they only addressed one, which was statute of limitations. Right. But they don't require two, though. I mean, you've got to assert all your defenses in an answer, but I don't know that there's any rule that you have to assert all your defenses when you make a motion to dismiss on a particular ground. I would say when the District Court specifically orders you to do so, there is. Well, they ordered them to answer. I don't know. It's kind of an interesting situation. You could have responded to their motion by filing your own motion for sanctions, right? Right. This is a pro se petitioner who replied to their motion to dismiss as he assumed was the correct course of action. He had a responsive pleading from the State. He filed a reply. The magistrate then, when it filed its report and recommendations, taking the motion to dismiss as an answer because it did not find that the State had adequately showed cause, because in the State's motion to dismiss, all it said was, we want to raise statute of limitations. And the magistrate correctly found you could have raised that in your answer along with the exhaustion of State remedies like we asked you to do. At that point, after the report and recommendations was filed, the petitioner pro se filed objections, as was his right. The State never filed any objections to the report and recommendations saying you should not have deemed our motion to dismiss an answer. We want to have another opportunity. They didn't object. You said that the magistrate judge, when he said, when she said don't file a dispositive motion, file an answer that said and directed them to address exhaustion. That's right. I didn't get that corrected in what you said. I did see where she said don't file a dispositive motion, just file an answer. I have it here in the reply brief on page 3, and it's also at excerpts of record 10, page 2. Okay. Respondent shall not file a dispositive motion in place of an answer without first showing cause as to why an answer is inadequate. The answer shall address the issue of exhaustion of State remedies. All right. I'm sorry, I missed that. Does the Court have any questions regarding the sua sponte consideration? No, but I do have some questions as to whether there has been a sufficient showing that the Arizona Rule 32-whatever appropriately could be relied upon as a procedural default on the basis that the rule was adequate. There's another word that I think it was, but the adequacy portion of it is what concerns me. There's that letter from the clerk of the Court of Appeals saying that notices of appeal that got filed in the Arizona Court of Appeals rather than the trial court were typically sent to the trial court. And so that that particular Rule 32 may not have been consistently and adequately followed sufficient to be a procedural bar to raising the claim in Federal court. That's right, Your Honor. And I don't believe the State has met their burden to show that it was adequately applied, clear and consistently applied. And I have two reasons. I understand Judge Thompson's question correctly. I think I do. What he's asking is, I think, is this. Ordinarily, to raise inadequacy, a Petitioner must demonstrate, and normally it's done by decisions, that here they applied it, here they didn't, here they did, here they didn't. And at that point, the burden shifts to the State. I think this case is a bit unusual in that the Petitioner's claimed inconsistency or inadequacy is a statement from a clerk of court about their practice during kind of a nebulous period of time. Is that sufficient? Yes. The burden on the Petitioner is quite modest. And this Court discusses it in Bennett v. Mueller and in Stokes v. Anderson. Even though a Petitioner may satisfy the burden by asserting specific allocations, he need not do so. And even though a Petitioner may support his burden with case law, he need not do so. Now, in this case, we're resting our assertion of inadequacy on two grounds that we believe have met the burden. One is this rule in 1999, when the Petitioner filed his petition for review in the Court of Appeal instead of the trial court, was amended in 2000 for precisely that reason. The comment to the rule discusses that it was amended to achieve uniformity because petitions for review in other instances, like direct appeal, go to the next higher court. They don't get filed in the lower court. So apparently, because this was happening so often, they amended the rule. Now, that is also shown by this declaration regarding the clerk of court who said, yes, that did happen and this is what we were doing. I think that that is more than sufficient evidence that this rule was not adequately followed in Arizona, and that's why they ended up amending the rule. I think it's now the State's burden to prove that it was. In the Federal system, if there's a habeas petition filed by a prisoner from, say, Houston, and somehow that habeas petition gets denied on the merits in, say, Phoenix, Arizona and gets up to us, we would routinely send that back to the Fifth Circuit for proper handling, and there would be a record of it. Do you know if records during this period of time that you allege that if someone improperly filed at that point in time with the Arizona Court of Appeals, they sent it back to the superior court, were records kept of that? I've been unable to find any record of it happening in this case, which is exactly what shows that it wasn't consistently applied. You have a clerk saying that this is what we usually did, but I can't promise it happened in this case, and then you have this case where obviously it didn't happen. This petition didn't get forwarded to the trial court. And therein lies the rub. I would like to retain any time I have for rebuttal. Okay. Thank you. We'll hear from the Department of Corrections at this time. May it please the Court. My name is Cassie Wu. I'm an assistant attorney general from the State of Arizona, and I represent the Respondents in this case. The first point that I would like to address is the order that the State received from the district court. It did not exclusively require an answer. It did say that if the State was able to show cause as to why an answer was inadequate, then the State may be permitted to file a dispositive motion. And the problem that the State is faced with in this case and in all habeas cases in Arizona is the fact that the Court routinely requires answers and never allows the State to file dispositive motions, which is contradictory to this Court's case law. In Morrison v. Mahoney, this Court recently recognized that a motion to dismiss is a proper pleading. So in this case, the State had a good faith basis that the statute of limitations had been violated and filed a motion to dismiss. But prior to getting into the substance of its argument in the motion to dismiss, the State attempted to show cause to the district court as to why an answer was inadequate. And those reasons are the same reasons that are very specifically laid out in Morrison v. Mahoney, which is an answer would require the raising of all affirmative defenses or risk waiving them, whereas a motion to dismiss can be limited to a single affirmative defense. And it's in the interest of the Court and the State to be able to conserve resources and expedite the process of resolving these petitions. I would guess that what's behind the courts is that so often we get two or three of these motions and we've got a desk full of habeas petitions, and we'd rather just get everything, all the defenses in front of us at once and we can rule on everything. And we find that it's more efficient. I mean, you can say what's good for the Court, but the Court has decided what's good for it and decided we'd rather have single handling of habeas petitions. And the State, understandably, would rather do it another way, but I don't know when the Court orders it that they have to continue to resist. Well, Your Honor, the problem is that the District of Arizona's policy is contradictory to Ninth Circuit case law, which specifically recognizes that motions to dismiss are appropriate, particularly in statute of limitations instances. Our office rarely files motions to dismiss in anything other than a statute of limitations. Is that case in the same context where a district court had ordered an answer? No, Your Honor. The district court had not ordered an answer in Morrison v. Mahoney. Well, perhaps you do. Your office does get a few of these cases, maybe down the line. You'll have one teed up to challenge it. Why don't we move on to the adequacy prong? And you heard our discussion with opposing counsel. The nub of this is whether this petition, this Article 32, Rule 32 petition, was timely filed in superior court, which is the requirement at the time, correct? Correct, Your Honor. And the Petitioner's contention is that it was, in fact, filed at the Arizona Court of Appeals. Correct. It was filed in the wrong court, Your Honor. Filed in the wrong court. If it had been, if it had been filed in superior court the same day it was filed in the Court of Appeals, would it have been timely? It would have, Your Honor. Okay. Now, they, it's their initial burden to establish imperfect enforcement, if you will, of that rule. And they came forward with an affidavit or statement from a clerk of court that said during a period of time, we would routinely get these petitions filed in incorrectly in the Court of Appeals, and we'd just send them straight down the street to superior court. That would be the end of it. Why isn't that enough to tee up the issue? Well, Your Honor, I have several points I'd like to make about that. First, at no point in the district court did Petitioner ever assert that Rule 32.9c was not an independent and adequate State bar. And he could have done that when he filed his objections to the report and recommendation and failed to do so. He was pro se at the time? He was. So our, the Respondent's position is that he has waived that argument. Second, the declaration, which is an affidavit from opposing counsel, is essentially double hearsay. First, it's the affidavit from opposing counsel that she received a voicemail from the clerk of the court. And in that affidavit, he does not say that he personally knows what the practice was. He says, I am told that the procedure at the time was, and he wasn't there. So he doesn't know what the procedure at the time was any more than I do. He simply says that's what he was told by somebody. And we have no idea who he was told that by, which is why the State moved to strike this supplemental excerpt of record, which are also never presented to the district court on the procedural default issue. How hard would it be for the State to find out the answer to this question? Who told him? No, no, no. What the practice was at the time. Was it indeed the practice of the clerk's office of the Arizona Court of Appeals that when these petitions were filed there when they shouldn't have been to send them down the street? Your Honor, I personally think it would be extremely difficult for the State because there was a different clerk of the court at the time. And there's no evidence that, or there's nothing to indicate that Rule 32.9C was not being applied consistently. There's no case law out there on this. There's no orders that, as far as we've seen. So I don't know how the State would go about establishing what the policy was in 1999 when there's a different clerk of the court at this time. Is it correct that the rule now is that these petitions are properly filed in the Court of Appeals? They amended the rule and changed it in 2000. But do we know why? They, yes. As opposing counsel said, it was to achieve uniformity amongst the rules. Because with direct appeals, it was proper to file the petition for review or, well, petitions for review were filed. Actually, I'm not entirely certain now that I think about it. But the problem is what happened in 2000 doesn't indicate that Rule 32.9C was in any way confusing to a petitioner when he filed it. It specifically stated he was to file it in the trial court. So the fact that they changed it in 2000 and said, okay, now we want you to file them in the Court of Appeals. Well, your opponent says that one of the reasons it was changed is because of what they allege happened here. That it that is that there were more than a handful of folks confused by this difference in the rules, and they would file it in the Court of Appeals instead of the trial court. That is what Petitioner alleges. However, the comment does not indicate that that was the reason for the change in the rule. Would the Court like me to address the district court's ability to address procedural default sua sponte? No. No. No, I don't think we need any more. I think that's been covered. Okay. Is there anything else you'd like to bring to our attention? No, Your Honor. We just would like to request this Court affirm the district court's denial of the petition for good of habeas corpus. Thank you very much for your argument. Rebuttal. Counsel, I and this will use up your time, and I'm sure that the presiding judge will take account of that, but it's one way of looking at this case is to say that there has been no variation at all in the application of Rule 32.9. In other words, the rule says you file a petition for review in the lower court. It's true, people who make mistakes and send it to the Court of Appeal get the benefit of the Court of Appeal's help in sending it down, but that doesn't change the rule. The rule is that it still has to get to the lower court. It might well be that if a petitioner sent his petition for review to the Department of Commerce, that department might well send it back to the superior court, and then the court could look at it and say, well, it met the requirements of Rule 32.9. It got there. But is that? Is that? Your Honor, my response to that would be that the reason that there is a rule on federal habeas, that a state procedural default must be an independent and adequate state ground, the adequacy component has to do whether the rule is clear, consistently applied, and well-established. So sure, Rule 32.9 may have been clear, file it in the lower court. It may have been well-established. It had been the rule, but it wasn't consistently applied. I don't know that. In other words, it may well be that the Court of Appeal routinely forwarded those things to the superior court, but we don't know what happens. I don't believe that affidavit addressed it. If the thing was filed in the Court of Appeals when it would have been timely, but by the time the Court of Appeals sent it down to the lower court, it became untimely. We don't know. We don't know that. What? You're right. We don't know that nuance. For all I know, there's one rule, and that is you have to, within a certain number of days, file a petition in the superior court. If one was filed in that time, it's timely. If one wasn't filed in that time, it's untimely. And so far as I know, there's never been any variation, and there's nothing in the record that indicates that there has been any variation in it. Well, we do know that that rule was amended the very next year to achieve uniformity. Right. Now you have to file it in a different place. We also know, and this is an interesting fact in this case, that our pro se petitioner asked the prison officials for the rule of where to file his petition for review. They gave him the rule for direct appeals, which said, file it in the Court of Appeal. He followed the rule, and that's what he did. In the Supreme Court, yeah. Exactly. And that's exactly why they ended up amending the rule, because it was happening to too many people. And that's the whole point of not holding. Your opponent says that the comments to the rule don't indicate that was why they did it. Well, I have it cited in my appellant's opening brief, page 15. OK. The only other comment that I wanted to make was I disagree with the state's position on filing a single issue motion to dismiss for the sake of judicial economy. It seems to me that that's a very piecemeal approach. Had the court found that this petition was timely after their statute of limitations motion to dismiss, then would they have filed another motion to dismiss on exhaustion? And then if they lost there, would they have filed another one on procedural default? And then if they lost their non-uniform retroactivity under Teague, it seems that if they're trying to effectuate judicial economy, they should put all of their If that's the way they want to go. Otherwise, it's wasting everybody's time. OK. Thank you for your argument. Thank both sides for their argument. The case to argue will be submitted for decision. We'll now proceed.
judges: Canby, Thompson, Hawkins